UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| LAMONTE FISHER, | ) | |
| --- | --- | --- |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 4:06CV1752 AGF |
| | ) | |
| JIM MOORE, | ) | |
| | ) | |
| Respondent. | ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on the pro se petition of Missouri state prisoner, Lamonte Fisher, for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] Petitioner was indicted on two charges: (1) acting with co-defendant Robin Dunlap in the delivery of a controlled substance (crack cocaine), and (2) drug trafficking. The charges arose from a drug transaction on September 17, 2001, involving an undercover police officer. Dunlap pled guilty, and on May 23, 2003, a jury convicted Petitioner of both charges. He was thereafter sentenced as a persistent drug offender to two concurrent 12-year terms of imprisonment. The convictions and sentences were affirmed on direct appeal, and Petitioner was denied state postconviction relief.

In the present action, Petitioner asserts that his constitutional rights were violated in the following two ways: (1) he was denied a fair trial as a result of the trial court sustaining the state's objection to his testimony regarding threats he received from a

---

[1] The parties have consented to the exercise of authority by the undersigned United States Magistrate Judge under 28 U.S.C. § 636(c).

police officer; and (2) defense counsel rendered ineffective assistance by not objecting when the state elicited testimony from Dunlap that she pled guilty to acting with Petitioner in the drug transaction, and for failing to request a limiting instruction that would have told the jury not to use this testimony as substantive evidence of Petitioner's guilt.

Respondent argues that habeas relief should be denied because Petitioner's first ground for relief was procedurally defaulted in state court, and the second ground was reasonably adjudicated by the state courts. For the reasons set forth below, habeas relief shall be denied.

## BACKGROUND

### Trial

The state presented evidence that on the night in question, an undercover police officer, Gary Wuest, asked Dunlap, Petitioner's acquaintance, to sell him (the officer) $50 worth of crack cocaine. Dunlap said she could arrange a deal, but that she had to make a phone call. She got into Wuest's car and he drove her a short distance to a pay phone outside a convenience store, where Dunlap made a phone call and then got back into Wuest's car. A few minutes later, Petitioner walked into the convenience store. Dunlap asked Wuest for the $50 and took it with her into the store. Wuest observed Dunlap give Petitioner money and Petitioner hand Dunlap something. Dunlap got back into Wuest's car and handed him crack cocaine. Wuest drove Dunlap a short distance and she was then arrested by other police officers. Petitioner was arrested when he came out

of the store, and the money Wuest had given Dunlap and some crack cocaine were found in Petitioner's possession. He was then driven to the police station by Officer John Jackman and another officer. A search of Petitioner at the police station revealed more crack cocaine in his possession, as well as some marijuana.

The defense theory was that Petitioner was innocent, and that the police were framing him. The defense asserted that Jackman had threatened to frame Petitioner unless Petitioner agreed to become an informant for the police, which Petitioner refused to do. In opening statement, defense counsel told the jury that evidence of such threats would be presented. In support of his defense, Petitioner called Dunlap as a witness. She testified that Petitioner did not give her the crack cocaine, but rather that she had had it on her all the time, and stated that she told the officer she had to make the phone call because she did not want him to know she had the drugs lest he rob her. She testified that she saw Petitioner in the store shopping and gave him the $50 to pay off a debt she owed him. She also testified that she pled guilty to selling the cocaine to Wuest, and that she had another drug conviction from about ten years earlier.

On cross-examination, the prosecutor began asking Dunlap about her guilty plea. Defense counsel objected, arguing that the prosecutor could impeach Dunlap with the fact of her convictions, but could not go into the circumstance of the recent plea. The court sustained the objection. Shortly thereafter, the prosecutor read to Dunlap the section of the transcript of her plea hearing wherein the court reviewed, and Dunlap acknowledged, the factual basis of the plea, which recited that Petitioner had acted with her to deliver the

cocaine to Wuest.  At Petitioner's trial, the prosecutor then asked Dunlap if she remembered that part of the plea hearing, and Dunlap explained that at the plea hearing, she was not focusing on the words being read, but just on the fact that she was going to get a term of just five years in exchange for her plea.  Defense counsel did not object to this testimony or ask for a limiting instruction.  (Tr. Transcript 270-72 / Resp. Ex. B Vol. II.)  The prosecutor continued to cross-examine Dunlap, who adhered to her testimony on direct examination that Petitioner was not involved in her drug deal with Wuest.

Jackman denied, on cross-examination, that he asked Petitioner to become an informant for the police, or that he told Petitioner that if he did not cooperate, he would make things worse for Petitioner.  Petitioner testified on his own behalf that he saw Dunlap in the store, and that she gave him the $50.  He denied that she had called him on the phone.  Petitioner testified that on the way to the police station, Jackman asked him about his prior convictions and noted that Petitioner was "working on" his "third strike."  Defense counsel asked Petitioner if Jackman made any threats.  The prosecutor objected on hearsay grounds, and the trial court sustained the objection, allowing Petitioner to answer "yes" or "no" to the question, but not to testify as to the "details" of any threats.  Petitioner then testified that Jackman did make threats and made clear what he wanted from Petitioner.  Petitioner further testified that after he (Petitioner) did not agree, Jackman acted "like he was kind of angry," but the other officer in the car said, "I don't trust him anyway."  Id. at 294-96.  Defense counsel did not make an offer of proof with respect to the excluded testimony.

In closing argument, the prosecutor stressed to the jury that both Petitioner and Dunlap were not credible witnesses as they each had prior drug convictions. The prosecutor also stated as follows:

> And the reason I am very confident of that fact [that the police did not frame Petitioner] is you heard from Ms. Dunlap who came in here, the convicted drug dealer, the woman who's pled guilty and named him as a co-defendant, and don't believe her story about I don't remember what happened, I just went in here to plead guilty. Folks, that is a pure out-and-out lie. She's just covering for him. They like each other.

Id. at 318.

**Direct Appeal**

Petitioner raised one argument on direct appeal: that the trial court abused its discretion in sustaining the prosecutor's hearsay objection regarding the threats Jackman allegedly had made to Petitioner. The appellate court ruled that the matter had not been preserved for regular review, and considered the matter for plain error, holding as follows:

> At trial, Defendant testified he was threatened by one of the officers. Defendant believed that if he did not cooperate with that officer, he would be set up and sent to jail. However, the charges for which he was prosecuted were delivery of a controlled substance and trafficking. These charges stem from a drug transaction, arrest, and bodily search conducted by a different officer. Defendant fails to show how excluding part of his testimony about a different officer resulted in manifest injustice. Point denied.

(Resp. Ex. F.)

**State Postconviction Proceedings**

In his amended motion for state postconviction relief, Petitioner raised the second claim he now raises in his federal habeas petition: that defense counsel rendered ineffective assistance by not objecting when the state elicited testimony from Dunlap that she pled guilty to acting with Petitioner in the drug transaction, and for failing to request a limiting instruction that would have advised the jury not to use this testimony as substantive evidence of Petitioner's guilt. Petitioner argued that the evidence against him as to Count I was "far from overwhelming" and that but for defense counsel's deficient performance on this matter, there was a reasonable probability that the jury would have found Petitioner not guilty of that count.

At an evidentiary hearing on the postconviction motion held on November 24, 2004, defense counsel testified that he had been a criminal defense attorney for approximately 27 years. He testified that he interviewed Dunlap and endorsed her as a witness because he thought she "could hold up well enough" in corroborating Petitioner's defense that he did not engage in the drug transaction with her. Counsel testified that at the time of the interview, he knew that Dunlap had pled guilty, but he did not recall reading the transcript of the plea hearing. He testified that during Dunlap's cross-examination, he thought that he had opened "the door somewhat" to the prosecutor's questions about the guilty plea. Counsel further stated that it was not until the time when Petitioner's direct appeal was pending, that he became aware of the limited evidentiary scope of the disposition of a co-defendant's case, by coming across a court opinion on the

matter. Counsel mailed a copy of the opinion to Petitioner and suggested that the issue be raised in a motion for postconviction relief.

Counsel also testified that he chose, as part of his trial strategy, not to offer a limiting instruction with regard to Dunlap's plea because he felt it would just draw the jury's attention to the conviction and undermine Dunlap's credibility. He stated that had he "known" at the time of Petitioner's trial that the fact that Dunlap had pled guilty to acting with Petitioner was inadmissable, he would have objected to that aspect of Dunlap's testimony. (Resp. Ex. H.)

The motion court held that the state had a right to impeach Dunlap not only by means of her prior convictions, but also by means of her prior inconsistent statements, even if made in the context of her guilty plea. Thus, an objection by defense counsel to the admission of her prior inconsistent statement (that she acted with Petitioner in consummating the drug transaction) would have been without merit. The motion court further found that defense counsel's failure to ask for a limiting instruction was a matter of trial strategy, and that as such, was not ineffective assistance of counsel. (Resp. Ex. G at 39-45).

In affirming the denial of postconviction relief, the Missouri Court of Appeals reasoned, in part, that calling Dunlap as a witness was a matter of trial strategy, about which Petitioner did not complain. The appellate court distinguished case law limiting use of a co-defendant's plea, noting that Dunlap was called by the defense, not the state. Further, because Dunlap's answers to questions at her guilty plea were inconsistent with

her testimony at Petitioner's trial, her statements made at her plea hearing were admissible both for impeachment and as substantive evidence under Mo. Rev. Stat. § 491.074, which provides as follows: "Notwithstanding any other provision of law to the contrary, a prior inconsistent statement of any witness testifying in the trial of a criminal offense shall be received as substantive evidence, and the party offering the prior inconsistent statement may argue the truth of such statement." (Resp. Ex. K.)

## DISCUSSION

### Procedural Default and Standard of Review

Respondent argues that because the state appellate court reviewed Petitioner's first claim for habeas relief only for plain error, this Court is procedurally barred from considering the claim. Under the doctrine of procedural default, when a federal habeas petitioner "fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review." Cone v. Bell, 129 S. Ct. 1769, 1780 (2009). Currently, there is a split within the Eighth Circuit with respect to whether plain error review by the state appellate court "cures" a procedural default. Shelton v. Purkett, 563 F.3d 404, 408 (2009). This Court, to err on the side of caution, will follow the line of cases permitting federal habeas review in such circumstances, mindful that such review is for "manifest injustice," coupled with the deferential standard of review mandated in habeas cases by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See id.

Under AEDPA, when a claim has been adjudicated on the merits in state court, an application for a writ of habeas corpus cannot be granted unless the state court adjudication

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Further,

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

Id. § 2254(e)(1).

The term "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court]'s decisions as of the time of the relevant state-court decision." Carey v. Musladin, 549 U.S. 70, 74 (2006) (citation omitted).  A decision by a state court is "contrary to" clearly established federal law if it "'applies a rule that contradicts the governing law set forth in [Supreme Court] cases'" or if it "'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent.'" Price v. Vincent, 538 U.S. 634, 640 (2003) (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).  A state court "unreasonably applies" clearly established

federal law when it "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

> A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied a Supreme Court case incorrectly. Rather, it is the habeas applicant's burden to show that the state court applied that case to the facts of his case in an objectively unreasonable manner.

Price, 538 U.S. at 641 (internal quotations and citations omitted); see also Barnett v. Roper, 541 F.3d 804, 811 (8th Cir. 2008).

The factual findings of the state courts also may be challenged in a § 2254 petition, but they are subject to "an even more deferential review." Kinder v. Bowersox, 272 F.3d 532, 538 (8th Cir. 2001). A petitioner "is only entitled to federal habeas relief if the state court made 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding,' 28 U.S.C. § 2254(d)(2), which requires clear and convincing evidence that the state court's presumptively correct factual finding lacks evidentiary support. 28 U.S.C. § 2254(e)(1)." Trussell v. Bowersox, 447 F.3d 588, 591 (8th Cir. 2006). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, ___ S. Ct. ___, 2010 WL 173369, at *6 (Jan. 20, 2010) (declining to decide whether the "arguably more deferential standard" of § 2254(e)(1) applies in every case presenting a challenge under § 2254(d)(2)).

**Exclusion of Evidence**

Petitioner claims that he was denied a fair trial as a result of the trial court sustaining the state's objection to his testimony regarding threats made by Jackman that unless Petitioner become an informant, Jackman would frame him as having been involved in the drug transaction with Dunlap. "[T]he Constitution . . . prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote . . . ." Holmes v. South Carolina, 547 U.S. 319, 327 (2006); see also Guinn v. Kemna, 489 F.3d 351, 354 (8th Cir. 2007) (citing Chambers v. Mississippi, 410 U.S. 284 (1973)). This Court believes that here the trial court erred in limiting Petitioner's testimony as to the alleged threat made by Jackman. Under Missouri law, this testimony would seem to fall under the state-of-mind exception to the hearsay rule: "A declaration that indicated a present intention to do a particular act in the immediate future, relevant to a fact in issue, is admissible to prove that the act was in fact performed." See State v. Rios, 234 S.W. 3d 412, 423 (Mo. Ct. App. 2007) (citation omitted).

Nevertheless, the Court does not believe that manifest injustice resulted from this error. Defense counsel was permitted to ask Jackman whether he had made the alleged threats to Petitioner, which Jackman denied. And Petitioner was allowed to testify that Jackman had made the threats. Even without Petitioner's testimony as to "the details" of the threats, these details were essentially before the jury.

**Ineffective Assistance of Counsel**

Petitioner claims that defense counsel rendered ineffective assistance by not objecting when the state elicited testimony from Dunlap that she pled guilty to acting with Petitioner in the drug transaction, and for failing to request a limiting instruction that would have told the jury not to use this testimony as substantive evidence of Petitioner's guilt. The Sixth Amendment guarantees a criminal defendant the right to effective assistance of trial counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984). To succeed on a claim of ineffective assistance of trial counsel, a habeas petitioner must establish both "that counsel's representation fell below an objective standard of reasonableness," and that but for counsel's deficiency there is "a reasonable probability" that the result of the trial would have been different. Id. at 688, 694. When the issue involves a matter of trial strategy, there is a strong presumption that the strategy was sound and did not amount to ineffective assistance. Bell v. Cone, 535 U.S. 685, 698 (2002); Williams v. Bowersox, 340 F.3d 667, 672 (8th Cir. 2003).

> Moreover, in the context of a § 2254 petition, a petitioner
>
> must do more than show that he would have satisfied Strickland's test if his claims were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. Rather he must show that the [state court] applied Strickland to the facts of his case in an objectively unreasonable manner.

Underdahl v. Carlson, 381 F.3d 740, 742 (8th Cir. 2004) (quoting Bell, 535 U.S. at 698-99).

The Court is mindful that, generally, a codefendant's guilty plea may not be offered by the prosecution as substantive evidence of a criminal defendant's guilt. United States v. Rogers, 939 F.2d 591, 594 (8th Cir. 1991). Here, however, as noted above, the Missouri Court of Appeals held that under Mo. Rev. Stat. § 491.074, Dunlap's indication at her plea hearing that she had acted with Petitioner was admissible as a prior inconsistent statement for impeachment purposes and for substantive purposes. The propriety of that ruling is even more clear where, as here, Dunlap was called as a defense witness and opened the door to the testimony regarding her plea. Thus, any motion to strike the testimony in question would have been properly denied under state law.

Nor would a motion to strike the testimony in question have been meritorious on federal constitutional grounds. See California v. Green, 399 U.S. 149, 164 (1970) (holding that application of another state's statue which, like § 491.074, allowed the use of a witness's prior inconsistent statement for both impeachment and for the truth of the matter asserted, did not violate a criminal defendant's Confrontation Clause rights[2]); Rado v. Connecticut, 607 F.2d 572, 578-81 (2d Cir. 1979) (holding that habeas petitioner's confrontation and due process rights were not violated by the prosecutor reading from the transcript of the petitioner's accomplice's guilty plea proceeding, where

---

[2] This principle was reaffirmed by the Supreme Court in Crawford v. Washington, 541 U.S. 36, 59 n.9 (2004) ("Finally, we reiterate that, when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements.").

the accomplice testified at petitioner's trial as a hostile witness for the prosecution and the prior statements made at the guilty plea incriminated the petitioner); Isaac v. U.S., 431 F.2d 11, 15 (9th Cir. 1970) (holding that where a habeas petitioner who was charged with conspiracy elected to elicit from his codefendant, a defense witness, the fact that he had pleaded guilty to an offense, the prosecution was entitled to show on cross-examination that the guilty plea had been entered to the conspiracy charge, and the jury could properly consider the guilty plea as substantive evidence that a conspiracy existed, as well as bearing on the codefendant's credibility; fact that the jury was allowed to consider the codefendant's acknowledgment at his plea hearing that the petitioner was part of the conspiracy, which was inconsistent with the codefendant's testimony at petitioner's trial, as substantive evidence of the petitioner's guilt, did not present a federal constitutional question).

The state courts also reasonably found, based upon defense counsel's testimony at the postconviction hearing, that defense counsel's failure to request a limiting instruction as to Dunlap's plea-hearing statements was a matter of trial strategy, and did not constitute ineffective assistance of counsel. See Wood, 2010 WL 173369, at *6 (holding that evidence in the state court record could fairly be read to support the state court's factual determination that counsel's failure to present evidence of the petitioner's mental deficiencies was the result of a deliberate decision to focus on other defenses); Strickland, 466 U.S. at 690 (explaining that strategic decisions by counsel are "virtually unchallengeable" unless they are based on deficient investigation of the facts and law).

- 14 -

As the state appellate court noted, Petitioner did not - nor does he now - challenge defense counsel's strategy to call Dunlap as a witness in the first place.

In sum, the state courts' adjudication of Petitioner's claim of ineffective assistance of counsel based upon the prosecution's use of Dunlap's guilty plea was neither contrary to, nor did it involve an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Further, the state courts' adjudication was not based on an unreasonable determination of the facts in light of the evidence. As such, Petitioner's second ground in his habeas petition is also without merit.

## CONCLUSION

The Court concludes that Petitioner is not entitled to federal habeas relief. Furthermore, the Court does not believe that reasonable jurists might find the Court's assessment of the procedural or substantive issues presented in this case debatable or wrong, for purposes of issuing a Certificate of Appealability under 28 U.S.C. §2254(d)(2). See Miller-El v. Cockrell, 537 U.S. 322, 337 (2003) (standard for issuing a Certificate of Appealability) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)).

Accordingly,

**IT IS HEREBY ORDERED** that the petition of Lamonte Fisher for a writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a Certificate of Appealability shall not issue in this case.

A separate Judgment shall accompany this Memorandum and Order.

                                                 /s/ Audrey G. Fleissig
                                          AUDREY G. FLEISSIG
                                          UNITED STATES MAGISTRATE JUDGE

Dated this 27th day of January, 2010.